1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TINA TENNYSON, DOMINIC                    No. 2:19-cv-00429-KJM-EFB
     HAYNES-TENNYSON, and DEVON
12   TENNYSON,

13              Plaintiffs,                      ORDER

14        v.

15   COUNTY OF SACRAMENTO,
     SACRAMENTO SHERIFF'S
16   DEPARTMENT, SCOTT JONES, and
     DOES 1 to 100,
17
                Defendants.
18

19

20              On June 7, 2019, plaintiffs Tina Tennyson, Dominic Haynes-Tennyson and Devon

21   Tennyson filed the operative first amended complaint ("complaint"), bringing multiple federal

22   and state law claims against defendants County of Sacramento, Sacramento Sheriff's Department

23   and Sheriff Scott Jones. First Am. Compl. ("FAC"), ECF No. 10. Defendants now move to

24   dismiss the complaint in its entirety. Mot., ECF No. 14. Plaintiffs oppose the motion, Opp'n,

25   ECF No. 16, and defendants have replied, Reply, ECF No. 17. After consideration, and for the

26   reasons set forth below, defendants' motion is GRANTED in part and DENIED in part, and

27   plaintiffs are granted leave to amend.

28

                                              1

1   I.      BACKGROUND

2              Eight separate incidents give rise to plaintiffs' allegations.  Because the court must

3   accept as true plaintiffs' well-pleaded factual allegations and construe all factual inferences in

4   plaintiffs' favor, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

5   2008), the court adopts, in large part, plaintiffs' summary of the relevant factual allegations and

6   reproduces them here as follows.

7              On March 13, 2018, the police raided plaintiffs' home without a warrant.  FAC

8   ¶ 22.  The police pointed guns at, handcuffed, brutalized and placed Devon Tennyson and

9   Dominic Haynes-Tennyson[1] in police vehicles for several hours while their home was searched.

10  *Id.* ¶¶ 15–21.  Defendant law enforcement officers stepped on Devon, who suffers from a

11  disability related to his back, further exacerbating his disability.  *Id.* ¶ 19.  During the search of

12  plaintiffs' home, defendants held Tina Tennyson at gunpoint and did not allow her to move for

13  several hours while they ransacked her home and belongings, finding no related criminal activity.

14  FAC ¶¶ 22–25.

15             From that date forward for nearly a year, defendants followed, harassed and

16  mocked plaintiffs.  *Id.* ¶¶ 26–43.  They pulled plaintiffs over, handcuffed them and asked them

17  about their probation or parole status despite their not being subject to either, then subsequently

18  released them.  *Id.*  Still, the pattern of harassment continued.  *Id.*

19             Plaintiffs also were subject to two additional instances of such police conduct.  On

20  or about March 10, 2019, defendants pulled Devon over and arrested him for failing to have a

21  front license plate on his new vehicle.  *Id.* ¶¶ 44–48.  Later, on or about May 18, 2019, defendants

22  arrested Devon based on an alleged domestic dispute, booked and held him in custody for four

23  days at the Sacramento County; yet, no charges were ever filed against him upon his release.  *Id.*

24  ¶¶ 49–53.

25             Finally, regarding supervisory and municipal liability, plaintiffs allege that Sheriff

26  Scott Jones was a final policy-making official for defendants County of Sacramento and the

27  _____

28       [1] To clearly distinguish defendants Devon Tennyson, Dominic Haynes-Tennyson and Tina
    Tennyson, the court refers to each defendant by his or her first name when necessary for clarity.

2

1  Sacramento County Sheriff's Department as it relates to the training, supervision and discipline of

2  law enforcement officers acting under his command, and he knowingly participated in creating a

3  culture that fostered unconstitutional behavior by his subordinate officers. *Id.* ¶¶ 55–61.

4  Plaintiffs initiated this action on March 8, 2019, and on June 7, 2019, filed the

5  operative first amended complaint.  In all, plaintiffs bring seventeen claims for infringement of

6  their constitutional rights under 42 U.S.C. § 1983 and for a host of state law violations.  FAC

7  ¶¶ 62–186.  Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See*

8  *generally* Mot.  On September 20, 2019, the court heard oral argument on the motion.  Counsel

9  Arash Khosrowshahi appeared on behalf of plaintiffs; counsel Nicholas McKinney appeared for

10  defendants.  After hearing, the court submitted the matter for resolution.

11  II.   LEGAL STANDARD

12  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

13  complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

14  "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

15  cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990),

16  *overruled on other grounds, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

17  Although a complaint need contain only "a short and plain statement of the claim

18  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to

19  dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

20  to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

21  *Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an

22  unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a

23  formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at

24  555).  Determining whether a complaint will survive a motion to dismiss for failure to state a

25  claim is a "context-specific task that requires the reviewing court to draw on its judicial

26  experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay

27  between the factual allegations of the complaint and the dispositive issues of law in the action.

28  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

3

1    III.    DISCUSSION

2            A.    Federal Claims

3                    1.    Section 1983 Claims Against Doe Defendants

4            Plaintiffs bring the following six claims under 42 U.S.C. § 1983 against Doe

5    defendants in their individual capacity: (1) unreasonable force under the Fourth and Fourteenth

6    Amendments, (2) false arrest/imprisonment under the Fourth and Fourteenth Amendments,

7    (3) unreasonable entry/search under the Fourth and Fourteenth Amendments, (4) violation of

8    plaintiffs' rights to familial association under the Fourteenth Amendment, and (5) violation of

9    plaintiffs' right to familial association under the First Amendment; and (6) delay/denial of

10   medical treatment.  FAC ¶¶ 62–87, 136–40.

11           "As a general rule, the use of 'John Doe' to identify a defendant is not favored" by

12   federal courts.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  The court will ordinarily

13   "dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the

14   complaint would clearly be dismissed on other grounds.  The federal rules also provide for

15   dismissing unnamed defendants that, absent good cause, are not served within ninety days of the

16   complaint."  *Bonner v. Med. Bd. of California*, No. 2:17-CV-00445-KJM-DB, 2019 WL

17   3767480, at *1 n.1 (E.D. Cal. Aug. 9, 2019) (citing *Gillespie*, 629 F.2d at 642).

18           On September 23, 2019, three days after the motion hearing, the court issued a

19   scheduling order permitting fact discovery until August 17, 2020.  *See* ECF No. 21.  The court

20   has since approved the parties' stipulation extending the discovery cutoff date to March 17, 2021.

21   *See* ECF No. 23.  Thus, as of the signing of this order, the parties have had the benefit of

22   discovery seeking to identify Doe defendants.  Based on the discussion with counsel at hearing,

23   the court will dismiss all Doe defendants and allow plaintiffs the opportunity to amend,

24   substituting named defendants for those previously identified only as Does.

25           Accordingly, the court GRANTS defendants' motion to dismiss all § 1983 claims

26   against Doe defendants, with leave to amend.

27

28

                                                    4

2.      <u>Section 1983 Claim Against Sheriff Jones in His Individual Capacity</u>

Plaintiffs identify Sheriff Jones as a defendant in their § 1983 claim for unnecessary force.  FAC ¶¶ 62–67.  Defendants contend this claim must be dismissed because plaintiffs fail to state a viable claim for supervisory liability against Sheriff Jones in his individual capacity.  Mot. at 5–6.  Specifically, defendants argue plaintiffs fail to allege Sheriff Jones personally participated in an affirmative act or was personally aware of the alleged incidents such that he can be subjected to supervisory liability.  *Id.*; *see also* Reply at 1–2.  Plaintiffs contend they have sufficiently alleged facts to establish Sheriff Jones's liability based on his "training, supervision, and discipline of law enforcement officers acting under his command," given the theory of supervisory liability set forth in *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).  Opp'n at 5–6.

It is well established that "[a] supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Rodriguez*, 891 F.3d at 798 (citing *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)).  The causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id.* (alteration in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).  Therefore, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Starr*, 652 F.3d at 1208.

Here, the complaint is devoid of factual allegations that Sheriff Jones was personally involved in, knew of or refused to interject himself in the actions of his subordinate officers in a way that caused the infringement of plaintiffs' constitutional rights.  The allegations regarding Sheriff Jones in his individual capacity are that he "knowingly participated in creating and maintaining a culture of impunity for officers' use of unconstitutionally excessive force,

5

1    knowingly turning a blind eye to such abuses," including the practice of erroneously treating

2    citizens as if they are on probation or parole, and that he was inactive in the training, supervision

3    or control of his subordinates.  FAC ¶ 55.  These allegations are conclusory, pleading only in the

4    most general terms that Sheriff Jones knew or should have known his subordinate officers

5    engaged in conduct giving rise to the underlying deprivations.  Although plaintiffs cite the

6    officers' practice of erroneously treating citizens as though they are on probation or parole, they

7    include no factual allegations explaining Sheriff Jones's involvement in such a practice or failing

8    to discontinue it, other than to say vaguely that he "knowingly turn[ed] a blind eye."  FAC ¶ 55.

9    Given the eight separate incidents underlying the complaint, and the alleged constitutional

10   violations flowing therefrom, plaintiffs' allegations would need to plead factual support for

11   linking Sheriff Jones's conduct to each underlying deprivation; this they have not done.  *See OSU*

12   *Student All. v. Ray*, 699 F.3d 1053, 1070 (9th Cir. 2012) ("*Iqbal* emphasizes that a constitutional

13   tort plaintiff must allege that every government defendant—supervisor or subordinate—acted

14   with the state of mind required by the underlying constitutional provision.").

15              Plaintiffs cite *Estate of Alejandro Sanchez v. Cty. of Stanislaus*, No. 1:18-CV-

16   00977-DAD-BAM, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019), for the proposition that prior

17   incidents of similar conduct can support a policy or custom of indifference, and because the

18   complaint here includes allegations of eight incidents of unconstitutional behavior, plaintiffs

19   sufficiently plead a claim for supervisor liability under § 1983.  Opp'n at 4–5.  But the portion of

20   *Sanchez* on which plaintiffs rely addresses *Monell*-related[2] allegations, not individual supervisory

21   liability.  *Sanchez*, 2019 WL 1745868, at *4.  In addressing supervisory liability, the *Sanchez*

22   court dismissed plaintiffs' excessive force claim because the complaint contained nothing more

23   than "bare allegations that [the] supervisor 'knew or should have known' of misconduct," and

24   "left unsaid . . . what [the supervisor] defendant [] actually did or failed to do."  *Id.* at *6; *see also*

25   *Estate of Pimentel v. City of Ceres*, No. 1:18-CV-01203-DAD-EPG, 2019 WL 2598697, at *4

26   (E.D. Cal. June 25, 2019) (reaching same conclusion on similarly conclusory allegations); *Cota v.*

27   ───────────────
         [2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Plaintiffs'
28   *Monell*-related allegations are addressed below.

                                                          6

1   *Penzone*, No. CV-18-02535-PHX-RM, 2019 WL 415703, at *3 (D. Ariz. Feb. 1, 2019)

2   (dismissing supervisory liability claims where plaintiff only alleged unconstitutional conduct by

3   subordinate officers to support claim for inadequate training or supervision).

4   　　　　　The allegations here, although clothed in the broad language of supervisory

5   liability, lack the factual support typically found in viable supervisory liability claims at the

6   12(b)(6) stage.  For example, in the prisoner civil rights action of *Quezada v. McDowell*, the court

7   denied defendants' motion to dismiss plaintiff's supervisory liability claim where plaintiff alleged

8   he repeatedly notified the supervising defendant about subordinate defendants' "systematic

9   retaliations against Plaintiff, yet [the supervisor] failed to act."  No. 5:18-CV-00251-VBF-MAA,

10   2019 WL 3806406, at *7 (C.D. Cal. July 10, 2019), *report and recommendation adopted*, No.

11   EDCV 18-00251-VBF-MAA, 2019 WL 3802190 (C.D. Cal. Aug. 12, 2019).  Plaintiff also

12   alleged the supervisor's failure to act led to retaliation against him because it further emboldened

13   the subordinate's retaliatory behavior.  *Id.*  Finally, plaintiff cited a specific instance of

14   defendant's refusal to reprimand his subordinates after plaintiff notified defendant and his

15   attorney of the offending conduct.  *Id.*; *see also Reed v. Paramo*, No. 18-CV-361 JLS (LL), 2019

16   WL 398339, at *10 (S.D. Cal. Jan. 31, 2019) (finding plaintiff sufficiently plead supervisory

17   liability claim where plaintiff and others had lodged complaints against subordinate defendant's

18   retaliatory behavior, and defendant's refusal to act on complaints created policy of allowing

19   retaliatory conduct by its officers).

20   　　　　　Even viewing the allegations in plaintiffs' favor, as the court must, the complaint

21   contains nothing more than bare recitals and conclusory allegations as to Sheriff Jones's

22   knowledge or involvement in the underlying conduct.  The current allegations against Sheriff

23   Jones in his individual capacity will be dismissed with leave to amend.

24   　　　　　　　　　　3.　　Disability-Related Claims

25   　　　　　Plaintiffs also bring two claims against the Sacramento County Sheriff's

26   Department for disability discrimination under the Americans with Disabilities Act, 42 U.S.C.

27   § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, for county officials' alleged

28   use of excessive force against Devon Tennyson.

1          Because the ADA and Rehabilitation Act provide identical remedies, procedures

2   and rights, claims under both statutes are analyzed in unison.  *Vos v. City of Newport Beach*, 892

3   F.3d 1024, 1036 (9th Cir. 2018), *cert. denied sub nom. City of Newport Beach, Cal. v. Vos*, 139 S.

4   Ct. 2613 (2019).  Title II of the ADA applies to arrests.  42 U.S.C. § 12132; *Vos*, 892 F.3d at

5   1036 (citing *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd*

6   *in part, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S.

7   Ct. 1765 (2015)).

8          To state a valid claim under the ADA, plaintiffs must show: (1) Devon is an

9   individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of

10  a public entity's services, programs or activities; (3) he was either excluded from participation in

11  or denied the benefits of the public entity's services, programs or activities or was otherwise

12  discriminated against by the public entity; and (4) such exclusion, denial of benefits or

13  discrimination was by reason of his disability.  *Id.* (citing *Sheehan*, 743 F.3d at 1232).

14         Defendants argue plaintiffs merely present conclusory allegations regarding

15  Devon's "disability relating to his back that required him to need surgery" and that the injury

16  "substantially limited his major life activities."  Mot. at 13 (citing FAC ¶ 13).  Defendants assert

17  "[m]erely being afflicted with some respective limitations in movement does not qualify as an

18  impairment that substantially limits a major life activity."  *Id.*  Finally, defendants maintain

19  plaintiffs fail to allege the purported discrimination was intentional.  *Id.*

20         Plaintiffs counter that the same questions of fact relevant to excessive force

21  analysis also guide accommodation analysis under the ADA and the Rehabilitation Act.  Opp'n at

22  14 (citing *Vos*, 892 F.3d at 1037).  Here, given the allegations regarding the officers' lack of

23  reasonable force, plaintiffs contend they adequately plead facts pertaining to Devon's disability

24  (back pain) and Doe defendants' failure to reasonably accommodate his disability once aware of

25  the disability.  *Id.* at 15.

26         Here too plaintiffs fail to allege facts sufficient to state claims under the ADA and

27  the Rehabilitation Act.  The ADA defines "disability as "a physical or mental impairment that

28  substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life

8

1   activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

2   walking, standing, lifting, bending, . . . and working." *Id.* § 12102(2)(A).  Plaintiffs allege Devon

3   "suffers from a disability related to his back" that "substantially limit[s] . . . major life activities."

4   FAC ¶ 19.  Although plaintiffs identify the general nature of the disability, more is required to

5   state a claim.  *See Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1136 (N.D. Cal.

6   2015)("[W]here, as here, a party alleges that he or she is disabled under the ADA, courts have

7   generally required the party to plead the disability with some factual specificity.").

8          For this reason, the court GRANTS defendants' motion to dismiss plaintiffs'

9   disability related claims, but with leave to amend.

10                      4.    *Monell* Claims

11         Plaintiffs seek to impose liability on Sheriff Jones in his official capacity, along

12   with the County of Sacramento and Sacramento County Sheriff's Department.  FAC ¶¶ 55–61.

13         Defendants move to dismiss the Sacramento County Sheriff's Department because

14   it is not a separate legal entity under § 1983, arguing it is redundant to name it as well as the

15   County of Sacramento.  Mot. 6.  Defendants also move to dismiss plaintiffs' *Monell* claims for

16   failure to adequately allege a pattern or practice of violative behavior under the Fourth

17   Amendment and failure to allege a specific training program or policy enabling such conduct.  *Id.*

18   at 8–9.

19         Plaintiffs contend that a sheriff's department is a distinct legal entity under § 1983

20   and therefore may be a named party separate from the county itself.  Opp'n at 8–9.  Plaintiffs also

21   maintain they bring a valid *Monell* claim because (1) Sheriff Jones and the Doe defendants

22   created and enforced policies of excessive force and *de facto* probation/parole; (2) defendants

23   failed to properly train law enforcement officers or update policies out of deliberate indifference,

24   despite knowledge of other persons' experiencing harms similar to those plaintiffs experienced;

25   and (3) Sheriff Jones created and maintained "a culture of impunity for officers' use of

26   unconstitutionally excessive force," including through the practice of erroneously treating citizens

27   as though they are on probation or parole.  *Id.* at 9–10.

28

1    As a preliminary matter, "[w]hen both a municipal officer and a local government

2  entity are named, and the officer is named only in an official capacity, the court may dismiss the

3  officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*,

4  533 F.3d 780, 799 (9th Cir. 2008); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As

5  long as the government entity receives notice and an opportunity to respond, an official-capacity

6  suit is, in all respects other than name, to be treated as a suit against the entity.").  The official-

7  capacity claims against Sheriff Scott Jones are therefore dismissed with prejudice and without

8  leave to amend.  *See Venegas v. Sniff*, No. 5:18-CV-02293-JLS (SHK), 2020 WL 2574947, at *17

9  (C.D. Cal. Apr. 9, 2020) (dismissing official-capacity claims against individual defendants,

10  including sheriff, as "duplicative and redundant"), *report and recommendation adopted*, No.

11  5:18-CV-02293-JLS (SHK), 2020 WL 2572458 (C.D. Cal. May 21, 2020).

12    Next, addressing defendants' contention the Sheriff's Department is essentially

13  synonymous with the County itself under § 1983, the court finds the Sheriff's Department is a

14  properly named defendant.  Although there are divergent views among the courts within the Ninth

15  Circuit on this issue, the court joins with those that follow *Streit v. Cty. of Los Angeles*, 236 F.3d

16  552, 566 (9th Cir. 2001), as treating a local law enforcement agency including a county sheriff's

17  department as a separate legal entity under § 1983.  *See, e.g., Parks v. Christian*, No. CV 19-

18  4346-GW (JPR), 2019 WL 4058578, at *2 (C.D. Cal. Aug. 28, 2019) ("California police

19  departments are independently suable public entities."); *Hurth v. Cty. of Los Angeles*, No. CV 09-

20  5423 SVW (PJWx), 2009 WL 10696491, at *2-4 (C.D. Cal. Oct. 28, 2009) ("Under Ninth Circuit

21  precedent the Sheriff's Department is a suable 'person' under 42 U.S.C. § 1983 with respect to

22  Plaintiff's claims."); *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp.3d 1162, 1170-71 (E.D.

23  Cal. June 25, 2019) (reviewing development of common law, noting "[m]ore recently, the Ninth

24  Circuit has permitted an action under § 1983 to proceed against a California sheriff's department

25  notwithstanding the department's contention that it is not a 'person' within the meaning of

26  § 1983."); *see also Olvera v. Cty. of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.17 (E.D. Cal.

27  2013) (noting issue without resolving it, with some discussion of *Streit* suggesting defendants'

28  reliance on *United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005) not "straightforward"); *but see*

10

1    *Gomez v. Cty. of Fresno*, No. 1:16-cv-00122-AWI-BAM, 2016 WL 8730877, at *2 (E.D. Cal.

2    Feb. 12, 2016) ("[M]unicipal departments and sub-units, including police departments, are

3    generally not considered 'persons' within the meaning of Section 1983." (citing *Kama*, 394 F.3d

4    at 1239 (Ferguson, J., concurring)).  In this respect, defendants' motion is DENIED; the Sheriff's

5    Department remains a defendant to this action.

6           Turning to the viability of plaintiffs' *Monell* claims generally, the court need not

7    reach the question of whether these claims are properly pled, as the complaint fails to state an

8    underlying constitutional violation and all individual capacity claims are being dismissed.  *See*

9    *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Lowry v. City of San Diego*, 858

10   F.3d 1248, 1260 (9th Cir. 2017) (declining to reach *Monell* issue where plaintiff failed to

11   establish underlying constitutional injury), *cert. denied sub nom. Lowry v. City of San Diego,*

12   *Cal.*, 138 S. Ct. 1283 (2018); *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007)

13   (same).  Nonetheless, assuming plaintiffs include their *Monell* claims in any amended complaint,

14   the court notes the claims could benefit from a greater level of particularity, specifically regarding

15   which theory or theories of *Monell* liability plaintiffs are alleging and which allegations support a

16   given theory.  *See Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (explaining

17   three ways to satisfy the "policy or custom" requirement under *Monell*).

18          Therefore, the court grants defendants' motion to dismiss plaintiffs' *Monell*

19   claims.

20       B.    State Law Claims

21          Where all federal claims are dismissed in an action containing both federal and

22   state law claims, a federal court may decline to exercise supplemental jurisdiction over the

23   remaining state law claims.  28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cty. of San*

24   *Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991); *see Jiang v. Lee's Happy House*, No. C 07-03606

25   RS, 2007 WL 3105087, at *3 (N.D. Cal. Oct. 23, 2007) ("[T]he Court declines to exercise

26   supplemental jurisdiction over the state law claims unless and until a federal claim is adequately

27   pleaded.").  As discussed above, the court is dismissing the federal claims based on individual

28   Doe liability and for failure to sufficiently allege supervisory liability of Sheriff Jones in his

1   individual capacity.  Accordingly, at this juncture the court DECLINES to exercise supplemental

2   jurisdiction over plaintiffs' state claims.  The state law claims are DISMISSED without prejudice

3   to renewal through a second amended complaint alleging viable federal claims.

4       C.      Leave to Amend

5               Under Federal Rule of Civil Procedure 15(a)(2), "The court should freely give

6   leave [to amend pleadings] when justice so requires," and the Ninth Circuit has "stressed Rule

7   15's policy of favoring amendments," *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160

8   (9th Cir. 1989).  "In exercising its discretion [to grant or deny leave to amend] 'a court must be

9   guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on

10  the pleadings or technicalities.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.

11  1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  Plaintiffs request

12  leave to amend should the court grant defendants' motion, Opp'n at 3, and defendants do not

13  oppose amendment.  Accordingly, the court grants plaintiffs the opportunity to file a second

14  amended complaint.

15  IV.     CONCLUSION

16              For the reasons discussed, the motion is GRANTED in part and DENIED in part.

17  Plaintiffs are granted leave to file a second amended complaint within twenty-one days of the date

18  this order is filed.  This order resolves ECF No. 14.

19              IT IS SO ORDERED.

20  DATED:  July 17, 2020.

21

22                                              CHIEF UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28