UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tina Tennyson, et al., | No. 2:19-cv-00429-KJM-EFB |
| Plaintiffs, | ORDER |
| v. | |
| County of Sacramento, et al., | |
| Defendants. | |

In this case, plaintiffs allege several Sacramento County Sheriff's Deputies arrested, assaulted, stalked and harassed a family for no good reason. The family sued under 42 U.S.C. § 1983 and California law. The County and the deputies now move to dismiss. For the most part, the complaint's factual allegations suffice to permit an inference of the defendants' liability. To the extent the complaint falls short, more particular factual allegations could close the gap, with a few exceptions. The motion is thus denied in part and granted in part with leave to amend, as explained below.

**I. ALLEGATIONS**

The plaintiffs are Tina Tennyson and her sons Dominic and Devon. Second Am. Compl. (SAC) ¶ 4, ECF No. 25. This order refers to them by their first names for clarity without intending undue informality. The court assumes at this stage that plaintiffs' allegations are true

/////

1

and considers those allegations in the light most favorable to their claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Before the events that led to this lawsuit, Devon was a defendant in a juvenile prosecution. SAC ¶ 24. The case was dismissed for lack of evidence. *Id.* Despite the dismissal, County officers retained his booking photo and treated him with suspicion. *See id.*

A few years ago, Dominic and Devon were driving near the family's home in North Highlands when eight Sheriff's deputies surrounded their car, aiming their guns and forcing the car to a stop. *Id.* ¶¶ 26–28. The deputies then ordered the two out of the car and onto the ground without explanation. *Id.* ¶ 28. They arrested Dominic, put him in handcuffs, and sat him in a police car for the next few hours. *Id.* ¶¶ 29–30. They also arrested Devon, twisting his arms forcefully behind him, forcing him to the ground, and standing on his back. *Id.* ¶ 32. The officers' harsh treatment exacerbated Devon's existing back injury, which had previously required surgery, and which prevents him from driving, working and caring for himself. *See id.* He told them about his injury, but the officers continued to handle him roughly and offered no treatment. *See id.* They then left him in a car for several hours. *See id.* ¶ 33.

Tina was at home when this happened. *Id.* ¶ 27. After arresting Dominic and Devon, the same eight deputies came to the family's home and forced their way in without a warrant, claiming they were searching for someone. *See id.* ¶ 35. The officers ransacked the house for the next three hours or more, pointing guns at Tina, screaming insults and obscenities, and breaking doors, curtains, a bed and a table. *See id.* ¶¶ 33–37. They told Tina to stay in the home and refused her pleas to use the restroom, which caused her to soil herself. *Id.* ¶ 37.

The memories of the arrest and search, the deputies' harsh treatment and the pointed guns still cause Tina, Dominic, and Devon anxiety today. *See id.* ¶¶ 31, 34, 38.

About a month after this first search and the arrests, two different deputies pulled Devon over for no reason. *Id.* ¶ 40. They asked him whether he was on probation or parole and whether he had anything in the car, and they said he had no choice but to answer their questions. *Id.* ¶ 41. He invoked his right to remain silent. *Id.* The deputies then ordered him out of his car, arrested him, and sat him in their car. *Id.* ¶ 42. Several more officers then arrived and searched Devon's

car with neither a warrant nor probable cause. *Id.* ¶¶ 42–43. They found nothing, but destroyed the speakers and an amplifier in the car. *Id.* ¶¶ 43–44.

Devon was stopped a few days later by an undercover police officer under the pretense of speeding and driving without a front license plate. *See id.* ¶¶ 46–47. The officer asked Devon again whether he was under probation or on parole and again arrested him. *Id.* ¶ 47.

Tina and Devon had another police encounter a few weeks later. *See id.* ¶¶ 48–49. They were leaving an appointment for a social services exam when officers in two cars boxed them in and prevented them from making a U-turn, then followed them before parking and watching them from across the street. *See id.* ¶¶ 48–51.

Devon was stopped again for no reason a few days later while he was driving home from work. *See id.* ¶¶ 52–53. The officer asked whether he was on probation or parole. *Id.* ¶ 54. Devon said he was not. *Id.* The officer looked at him incredulously and seemed to be looking for something in Devon's car, but eventually let him go. *See id.*

Officers followed Devon again the next day while he was riding his motorcycle. *See id.* ¶¶ 55–56. This was the fifth encounter after deputies searched the family's home.

Tina, Dominic and Devon filed this lawsuit a few months after the incident during which police followed Devon on his motorcycle. *See* Compl., ECF No. 1. They asserted several constitutional claims based on 42 U.S.C. § 1983 against the County, the Sheriff's Department, the Sheriff, and several unnamed individual officers. They also asserted claims under the Americans with Disabilities Act and California law. *See generally id.*

Two days after the Tennysons filed this case, officers made a pretextual traffic stop based on Devon's not having a front license plate. *See id.* ¶¶ 58–60. His partner was with him in the car. *See id.* ¶ 58. She was pregnant with their child at the time. *See id.* Devon explained to the officers that he had only recently bought the car, so the plates had not yet arrived. *Id.* ¶ 59. The officers responded that they were actually investigating a report that Devon had been seen with a gun a month ago. *Id.* ¶ 60. They arrested and handcuffed him in front of his girlfriend. *Id.* The stress caused her premature contractions, and she was hospitalized. *Id.* Tina was called to the

/////

scene, and after she arrived, Devon was released without explanation. *Id.* ¶ 61. The officers laughed and mocked the family as they left. *Id.*

The defendants moved to dismiss the lawsuit a few weeks after it was filed. *See* Mot. Dismiss, ECF No. 8. But before the motion was briefed, Devon was arrested and handcuffed in the Tennysons' home in response to a call about a domestic dispute. *See id.* ¶ 62. Officers held Devon in a car for an hour and half without explanation before booking him at the Sacramento County Jail. *See id.* ¶¶ 63–64. He told jail staff about his back problems and asked for a mat to sleep on, but they ignored him. *Id.* ¶ 64. The County kept him in the jail for four days. *Id.* He was never questioned. *Id.* ¶ 63. He was never charged. *Id.* ¶ 65.

The Tennysons amended their complaint to include allegations about Devon's most recent arrest and incarceration, ECF No. 10, and the County again moved to dismiss, ECF No. 14. The court granted the motion in part. *See* Prev. Order, ECF No. 24. The court dismissed the § 1983 claims against the individual officers, with leave to amend, because the officers' identities were unknown at the time, and the parties had agreed to conduct discovery to obtain their names. *See id.* at 4. The court dismissed the § 1983 claim against the Sheriff in his personal capacity with leave to amend because the Tennysons did not allege the Sheriff was personally involved in or knew about the alleged harassment. *See id.* at 5–7. The court dismissed the claim against the Sheriff in his official capacity without leave to amend because that claim was duplicative of the claims against the Sheriff's Department and the County itself. *See id.* at 9–10. The court dismissed the § 1983 claim against the Sheriff's Department and the County with leave to amend because it had dismissed the underlying constitutional claims to allow the individual officers to be identified, as described above. *See id.* at 11. The court also noted that if the amended complaint included claims against the Sheriff's Department and County, the complaint "could benefit from a greater level of particularity" about "which theory or theories of *Monell* liability" the Tennysons were pursuing. *See id.* (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). The court dismissed the ADA and Rehabilitation Act claims because Devon did not explain the basis of his claim that he had a disability. *See id.* at 7–9. Finally, the court dismissed the state

/////

4

law claims with leave to amend because it had dismissed the federal claims and the parties were not diverse for jurisdictional purposes. *See id.* at 11–12 (citing 28 U.S.C. § 1367(c)(3)).

The Tennysons amended their complaint as the court permitted; the case is thus proceeding on the second amended complaint, which includes the following claims:

1. Excessive force in violation of the Fourth Amendment under § 1983 (against all defendants), SAC ¶¶ 74–79;
2. False arrest or imprisonment in violation of the Fourth Amendment under § 1983 (against the individual officers), *id.* ¶¶ 80–84;[1]
3. Unreasonable entry and search in violation of the Fourth Amendment and § 1983 (against the individual officers), *id.* ¶¶ 85–89;
4. Denial of the right to familial association under the Fourteenth Amendment and § 1983 (against the individual officers), *id.* ¶¶ 90–94;
5. Denial of the right to familial association under the First Amendment and § 1983 (against the individual officers), *id.* ¶¶ 95–99;
6. Excessive force in violation of the California Constitution and Government Code (against all defendants), *id.* ¶¶ 100–06;
7. False arrest and imprisonment in violation of the California Constitution and Government Code (against all defendants), *id.* ¶¶ 107–12;
8. Unreasonable entry and search in violation of the California Constitution and Government Code (against all defendants), *id.* ¶¶ 113–18;
9. Failure to discharge a mandatory duty in violation of the California Government Code and Code of Civil Procedure (against the Sheriff's Department and County), *id.* ¶¶ 119–22;
10. Assault and battery (against all defendants), *id.* ¶¶ 123–28;
11. Trespass (against all defendants), *id.* ¶¶ 129–34;

---

[1] The fifteen individual officers are Chad Campbell, Jose Lemus, Nathan Burnette, Scott Puffer, Paul Pfeifer, Michael French, William Griggs, Brian Santin, Hector Chavez, U.A. Dominguez, Vy Suon, Renny Rojo, Le Coonce, M. Keegan, and J. Wilhelm. *See* SAC ¶¶ 9–23.

5

12. Intentional infliction of emotional distress (against all defendants), *id.* ¶¶ 135–40;

13. Negligence (against all defendants), *id.* ¶¶ 141–47;

14. Wrongful denial of medical treatment in violation of the Fourteenth Amendment and § 1983 (against the individual officers), *id.* ¶¶ 148–52;

15. Violations of the ADA (against the Sheriff's Department only), *id.* ¶¶ 153–58.

16. Violations of the Rehabilitation Act (against the Sheriff's Department only), *id.* ¶¶ 159–64.

17. Violation of California's Tom Bane Civil Rights Act (against all defendants), *id.* ¶¶ 165–98.

The defendants move to dismiss at least some portion of all but two of these claims under Rule 12(b)(6); they do not challenge the eleventh claim for trespass and the thirteenth claim for negligence. The motion is fully briefed and the court submitted it without a hearing. *See* Mot., ECF No. 29; Opp'n, ECF No. 32; Reply, ECF No. 34; Minute Order, ECF No. 33.

## II. ANALYSIS

The court summarized the applicable legal standard in its previous order and need not reiterate it here. *See* Prev. Order at 3.

Two of the defendants' broader arguments are best addressed at the outset. First, defendants move to dismiss various claims that officers are liable because they did not intercede to prevent another officer from violating the law. *See* Mot. at 7–8. The Tennysons do not respond to that argument. Arguments not included in an opposition are waived. *See S.G. by & through Morgan v. El Dorado Union High Sch. Dist.*, No. 18-00685, 2019 WL 2615752, at *4 (E.D. Cal. June 26, 2019); *see also* E.D. Cal. L.R. 230(c) (providing that absence of opposition may be construed as waiver). These claims are thus dismissed with leave to amend.

Second, the defendants argue that several of the Tennysons' Fourteenth Amendment claims should be dismissed because another amendment "provides an explicit textual source of constitutional protection." Mot. at 7; *see also, e.g.*, SAC at 12–13 (excessive force claim under the Fourth and Fourteenth amendments); *id.* at 17–18 (right of association claim under the First and Fourteenth amendments). As the Tennysons correctly explain, however, the Supreme Court

has incorporated the protections of the First and Fourth amendments against the states through the Fourteenth Amendment, *see* Opp'n at 7, and "courts have acknowledged that it is acceptable to reference the Fourteenth Amendment as a conduit for the Fourth Amendment." *Holcomb v. Ramar*, No. 13-1102, 2013 WL 5947621, at *3 (E.D. Cal. Nov. 4, 2013). The court therefore interprets the disputed references to the Fourteenth Amendment as explanations of the complaint's legal theories, not as separate constitutional claims, and turns now to the complaint's discrete claims.

### A. Excessive Force (Claims 1, 6 and 10)

The Tennysons assert a federal constitutional claim of excessive force under § 1983 against all of the defendants, including the County, *see* SAC ¶¶ 74–79, and similar claims of excessive force, assault, and battery under California law, *see id.* ¶¶ 100–06, 123–28. The court begins with the federal claims against the County.

Municipal governments can be liable for "their own illegal acts" under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis omitted). "In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell*, 436 U.S. at 694). For a policy to be unconstitutional, it must "reflect[] deliberate indifference" to constitutional rights. *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Plaintiffs who assert a municipal government is liable under § 1983 can rely on several different legal theories. A plaintiff can show the municipality had a "longstanding practice or custom" or "standard operating procedure." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)). A policy can similarly be "inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001), *abrogated on other grounds as recognized in Beck v. City of Upland*, 527 F.3d 853 n.8 (9th Cir. 2008)). Acts of

7

omission might also amount to an official policy. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled in part on other grounds by Castro*, 833 F.3d 1060. A county's deliberate decision not to train its employees, for example, might amount to policymaking by omission. *See id.* at 1249–50. A plaintiff can also show a local government had a policy by proving that the person who committed the alleged wrong was a "decision-making official" with "final policymaking authority whose edits or acts may fairly be said to represent official policy in the area of decision." *Menotti*, 409 F.3d at 1147 (quoting *Ulrich*, 308 F.3d at 985). Similarly, if a person with final policymaking authority delegated that authority to a subordinate or ratified the subordinate's decision, then the decision to delegate or ratify is also a "policy." *See Clouthier*, 591 F.3d at 1250.

The Tennysons explain their theory of the County's liability in terms of affirmative policies and delegation, but their claims actually rest on a theory of omissions, namely poor training and a blind eye toward excessive force. *See* Opp'n at 6–7. They allege essentially that the County and Sheriff's Department maintained a policy of indifference toward abuse by its officers. *See* SAC ¶¶ 69–72, 77. But their complaint describes only one instance in which officers used excessive force: when they pointed guns at Devon and Dominic, twisted Devon's arms painfully behind his back, and stood on Devon after forcing him to the ground. *See id.* ¶ 32. They do not allege the Sheriff or any supervising officers knew about this assault or ignored other abuses. They make only generic claims of "multiple past instances of use of excessive force and unreasonable force by law enforcement officers." *Id.* ¶ 70. Such generalized allegations do not support a claim of municipal liability under § 1983. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637–38 & n.5 (9th Cir. 2012) (rejecting similarly generic allegations of a deficient policy); *cf. McCoy v. City of Vallejo*, No. 19-1191, 2020 WL 374356, at *2–4 (E.D. Cal. Jan. 23, 2020) (denying motion to dismiss claims of excessive force under *Monell* because complaint identified several similar instances of excessive force by the defendant's officers). This shortfall might be corrected by adding more detailed factual allegations to the complaint, if plaintiffs are able. For that reason, the § 1983 excessive force claim against the County is dismissed with leave to amend. *See Hernandez*, 666 F.3d at 367–68.

As for the § 1983 claims against the individual defendants, the Tennysons name fifteen officers in their complaint. SAC ¶ 77. Seven of those officers, however, were not at the scene of the forceful arrest described above, and that arrest is the only alleged instance of excessive force. *See* SAC ¶ 28. A Fourth Amendment claim of excessive force cannot succeed against a defendant who did not use any force at all. *See Graham v. Connor*, 490 U.S. 386, 395–97 (1989). The claims of excessive force against the officers not identified in paragraph twenty-eight are thus dismissed, but with leave to amend if possible.

The allegations against the other eight officers, by contrast, do state a claim of unconstitutionally excessive force. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Evaluating the "reasonableness" of force "requires careful attention to the facts and circumstances of each particular case." *Id.* These circumstances include "the severity of the crime at issue, whether the suspect[s] pose[] an immediate threat to the safety of the officers or others, and whether [they are] actively resisting arrest or attempting to evade arrest by flight." *Id.* At this early stage, a claim may proceed if the complaint "plausibly suggest[s] an entitlement to relief" and contains "sufficient allegations of underlying facts to give [the officers] fair notice" of the claim against them so that they can prepare a defense. *Starr v. Baca*, 652 F.3d 1202, 1216 (2011).

Here, the Tennysons allege the eight named deputies threatened deadly force without provocation in circumstances that suggested no risk of a chase, no danger and no crime. *See* SAC ¶¶ 26–28. These allegations suffice to state a claim of unconstitutional excessive force. They are comparable, for example, to the allegations the Ninth Circuit found sufficient in *Robinson v. Solano County*, a case in which officers had pointed guns at an unarmed, outnumbered man suspected of a minor crime approaching them peacefully. *See* 278 F.3d 1007, 1013–15 (9th Cir. 2002). The Tennysons' allegations also parallel the evidence in *Thompson v. Rahr*, a case in which an officer used excessive force by pointing a gun at a man's head and threatened to shoot

even though the officer suspected only minor crimes and even though the circumstances suggested no danger or risk of flight. 885 F.3d 582, 586–87 (9th Cir.), *cert. denied sub nom. Thompson v. Copeland*, 139 S. Ct. 381 (2018), *reh'g denied*, 139 S. Ct. 1244 (2019). The court thus denies the motion as to the § 1983 excessive force claims against the eight officers listed in paragraph twenty-eight.

As noted above, the Tennysons also assert excessive force claims against all of the defendants under California law. The officers' arguments about these state law claims are derivative of their arguments regarding the federal excessive force claim, *see* Mot. at 8–9, 16, and the California Constitution "impose[s] higher standards for searches and seizures than compelled by the federal Constitution," *People v. Brisendine*, 13 Cal. 3d 528, 549 (1975), *superseded by statute on other grounds as noted in In re Lance W.*, 37 Cal. 3d 873, 879 (1985). Under California law, public entities are also "liable for injury proximately caused by an act of omission of an employee of the public entity within the scope of his employment . . . ." Cal. Gov't Code § 815.2(a); *see also id.* § 820(a) ("Except as otherwise provided by statute, . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person."). The motion to dismiss the state law excessive force, assault and battery claims against the fifteen officers is thus denied in part and granted in part with leave to amend in parallel with the motion to dismiss the federal claims. The Tennysons' state law excessive force claim against the County may proceed to the same extent as the state-law claims against the officers.

**B.     Unlawful Detentions and Searches (Claims 2, 3, 7 and 8)**

The defendants next move to dismiss some, but not all, of the Tennysons' claims of unlawful arrests and searches, which the Tennysons assert under both federal and state law.

Starting with the unlawful arrest claims, the defendants do not dispute that the complaint identifies three allegedly unlawful arrests. *See* Mot. at 9–10. All fifteen of the officers named as defendants participated in those three arrests. *See* SAC ¶ 28 (naming Officers Campbell, Lemus, Burnette, Puffer, Pfeifer, French, Griggs and Santin); *id.* ¶ 40 (naming Officers Chavez and Dominguez); *id.* ¶ 63 (naming Officers Suon, Rojo, Coonce, Keegan and Wilhelm). The Tennysons' allegations about these three arrests also make out viable claims under the Fourth

10

Amendment and California law; they allege their lengthy and warrantless detentions were supported by neither cause nor suspicion. *See Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (explaining what is necessary to state claim for false arrest or imprisonment under California law); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided that the arrest was made without probable cause or other justification."). The court denies the motion with respect to the claims of unlawful arrests. The court need not and does not consider whether the Tennysons' allegations about the many other arrests and detentions described in their complaint could support their claims independently.

As for plaintiffs' allegations of unlawful searches, the officers argue that according to the complaint, seven of them did not conduct any searches. *See* Mot. at 10. They are partly correct. The complaint includes allegations of unlawful searches by ten officers. *See* SAC ¶¶ 35, 43. But the Tennysons do not allege that Officers Suon, Rojo, Coonce, Keegan or Wilhelm conducted any searches. *See id.* ¶¶ 62–63. Nor do they object to this portion of the defendants' motion. The court thus dismisses the unlawful search claims against Officers Suon, Rojo, Coonce, Keegan and Wilhelm, with leave to amend. *See S.G.*, 2019 WL 2615752, at *4 (holding that arguments not presented in an opposition are waived); E.D. Cal. L.R. 230(c) ("A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion.").

### C. Familial Association and Right of Association (Claims 4 and 5)

The defendants next move to dismiss the Tennysons' claims that officers wrongly interfered with their family relationships in violation of the First and Fourteenth amendments. Despite their distinct constitutional derivations, these claims are similar.

The Due Process Clause of the Fourteenth Amendment protects parents' "liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "To amount to a violation of substantive due process, however, the harmful conduct must 'shock the conscience' or 'offend the community's sense of fair play and decency.'" *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (alterations omitted) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). Actions that "shock the conscience" are

"arbitrary," *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992), "egregious," "deliberate" and "unjustifiable by any government interest," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–49 (1998), "brutal" and "offensive," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957); they deny rights "implicit in the concept of ordered liberty," *Rochin*, 342 U.S. at 169 (quoting *Palko v. State of Connecticut*, 302 U.S. 319, 325 (1937)), and violate the "decencies of civilized conduct," *id.* at 173. Whether a defendant's conduct shocks the conscience turns on the facts of the particular case. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998); *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1119 (E.D. Cal. 2011).

The Supreme Court has also interpreted the First Amendment as protecting "the freedom to enter into and carry on certain intimate or private relationships," including "marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives." *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (citations omitted); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 619–20 (1984). The foundation of this protection is "the formation and preservation of certain kinds of highly personal relationships" as a "sanctuary from unjustified interference by the State." *Roberts*, 468 U.S. at 618. These relationships "have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs." *Id.* at 618–19. Protecting them "safeguards the ability independently to define one's identity that is central to any concept of liberty." *Id.* at 619.

Although the theoretical foundations of a First Amendment claim for interference with family relationships are well understood, it is unclear what a plaintiff must plead and prove to succeed in asserting such a claim. *See Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017). But the First and Fourteenth amendments' protections of family relationships often overlap. That was true in *Lee v. City of Los Angles*, for example. *See* 250 F.3d 668, 685–86 (9th Cir. 2001). There, the Ninth Circuit upheld the plaintiffs' claims under both the First and Fourteenth amendments without a separate analysis, citing decisions interpreting both amendments. *See id.* That holding has led another judge of this court to conclude that claims under both amendments "are measured by the same standard." *Kaur*, 263 F. Supp. 3d at 973.
/////

The parties here do not advocate the use of separate standards, and the court perceives no reason to consider the claims separately.

The Tennysons' family association claims are rooted in their allegations that officers separated them from one another during searches and arrests and kept Devon in jail, away from the family, for several days without questioning him or filing any charges. *See* Opp'n at 9–10. They have cited no similar case in which family-association claims have succeeded, and the court is aware of none. Viable claims have been founded on much more egregious wrongs and much longer, or even permanent, separations. In *Lee*, for example, a disabled child was allegedly mistaken for another person, falsely arrested, extradited and imprisoned, and his parents were repeatedly misinformed of his whereabouts. *See* 250 F.3d at 685–86. And in *Kelson v. City of Springfield*, a boy was left alone in the school bathroom with a gun after he showed the vice principal a suicide note, and he committed suicide. 767 F.2d 651, 652–53 (9th Cir. 1985); *see also Cotta v. Cty. of Kings*, 79 F. Supp. 3d 1148, 1177–79 (E.D. Cal. 2015) (collecting cases), *recons. in part on other grounds*, No. 13-359, 2015 WL 521358 (E.D. Cal. Feb. 9, 2015). The Tennysons' allegations are more readily comparable to the unsuccessful claims in *Rosenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011) (per curiam). In that case, the circuit held that an officer had not violated a family's rights by handcuffing a man in front of his children, taking the children to their mother, and telling them their father had done wrong and was going to jail. *Id.* at 1079–80. Despite the officer's poor judgment, his conduct did not "come close" to shocking the conscience in terms of the Fourteenth Amendment. *Id.* The same is true here, at least on the Tennysons' allegations as they currently stand. The court grants the motion to dismiss claims four and five, with leave to amend if possible.

**D.    Denial of Medical Treatment (Claim 14)**

Devon claims the County's officers violated his Fourth Amendment rights when they did not call for medical help after stepping on his injured back during his arrest. Officers must seek "necessary medical attention" for detainees who are injured while they are being apprehended. *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). An officer can satisfy this obligation

by "summoning the necessary medical help" or "by taking the injured detainee to a hospital." *Id.* (quoting *Maddox*, 792 F.2d at 1415). It is not necessary for a plaintiff to allege that officers were deliberately indifferent; detainees have a right to all care that is "objectively reasonable." *Id.*; *accord, e.g.*, *Estate of Cornejo ex rel. Solis v. Cty. of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) (unpublished).

Here, Devon alleges he told officers he had a previous back injury, was in pain and needed help. *See* SAC ¶ 32. He received no medical attention at all. These allegations, viewed in the light most favorable to Devon's claims, make out a plausible case of the officers' liability and put them on notice of his claims. The court denies the motion in this respect.

### E. ADA and Rehabilitation Act (Claims 15 and 16)

The court summarized the elements of a claim under the ADA and Rehabilitation Act in its previous order. *See* Prev. Order at 7–8. In short, to state a claim under the ADA or Rehabilitation Act, Devon must allege (1) he had a disability; (2) he was otherwise qualified to participate in or receive the benefit of the County's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018), *cert. denied sub nom. City of Newport Beach, Cal. v. Vos*, 139 S. Ct. 2613 (2019).

The court dismissed Devon's ADA claim in its previous order because he did not allege that he suffered from a condition that "substantially limit[ed]" one or more "major life activities." Prev. Order at 8 (quoting 42 U.S.C. § 12102(1)(A)). He now alleges his back injury sometimes prevents him from driving, working and caring for himself. *See* SAC ¶ 32. Working and caring for oneself are major life activities under the applicable regulations. *See* Prev. Order at 8–9 (quoting 42 U.S.C. § 1201(2)(A)). These allegations satisfy the first element of an ADA and Rehabilitation Act claim.

The County contends otherwise. It argues Devon's allegations are contradictory: he alleges both (1) that his disability prevents him from driving and working and (2) that he was

14

pulled over while driving home from work. *See* Mot. at 14; *see also, e.g.*, SAC ¶¶ 32, 52. These allegations are not necessarily self-contradictory. It is plausible to infer that Devon's injuries prevent him from driving and working only intermittently. To succeed, then, the County must show that intermittent limitations are by definition not "substantial" under the ADA and Rehabilitation Act. The court declines to read that limitation into the statute, which must be "construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). An impairment may be a "disability" under the ADA even if it does not completely or even "significantly or severely" restrict a "major life activity." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 436 (9th Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Those who work through their severe pain may very well be "disabled." *See id.*

The complaint's allegations satisfy the other elements of a claim under the ADA and Rehabilitation Act as well. Devon alleges he told staff in the County jail that he had back pain and needed a mat to sleep on, but they gave him no mat and made no other accommodations for four days. SAC ¶ 64. The court denies the motion with respect to the ADA and Rehabilitation Act claims.

The parties also dispute whether Devon can state a claim under the ADA or Rehabilitation Act based on his allegations about officers stepping on him during the first arrest and detention. *See* Mot. at 14–15; Opp'n at 12; Reply at 7–8. The court need not resolve this dispute to resolve the County's motion and declines to do so.

**F.    Failure to Discharge a Duty (Claim 9)**

The California Government Code makes public entities liable for injuries proximately caused by their failures to discharge certain "mandatory" duties. Cal. Gov't Code § 815.6. The duty must be "imposed by an enactment that is designed to protect against the risk of [that] particular kind of injury." *Id.* But the entity is not liable if it "establishes that it exercised reasonable diligence to discharge the duty." *Id.* The Tennysons ask for damages and a declaration of the County's liability under this section. *See* SAC at 23 (citing Cal. Code Civ. P. § 1060). They claim the County did not discharge mandatory obligations under Penal Code sections 849.5 and 851.6. *See id.* ¶ 121. Section 849.5 provides that if "a person is arrested and

released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of release." Cal. Penal Code § 849.5. It also requires that "the arrest shall not be deemed an arrest, but a detention only." *Id.* Section 851.6 provides if "a person is arrested and released and an accusatory pleading is not filed charging him or her with an offense," the law enforcement agency that performed the arrest must issue a certificate "describing the action as a detention." Cal. Penal Code § 851.6(b). That section also requires that "[a]ny reference to the action as an arrest" must be "deleted from the arrest records of the arresting agency and of the [California] Department of Justice" and that "any record of the action shall refer to it as a detention." *Id.* § 851.6(d).

The Tennysons allege the County did not deem their arrests detentions, did not issue certificates and did not delete arrest records as required. SAC ¶ 121. As a result, they allege, they suffered unspecified "injuries." *Id.* ¶ 122. It is reasonable to infer from the other allegations in their complaint that they have been subjected to further arrests and detentions and damaged reputations as a result of the County's alleged recordkeeping failures. *See id.* ¶¶ 24, 39–66. These allegations state a claim. *See, e.g., Rodgers v. City of Pasadena*, No. 16-3616, 2016 WL 7240135, at *4 (C.D. Cal. Dec. 12, 2016) (holding that allegations of "emotional and reputational harm" supported claims under Government Code § 815.6 and Penal Code §§ 849.5 and 851.6). The court denies the motion with respect to this claim.

### G. Intentional Infliction of Emotional Distress (Claim 12)

A complaint states a claim for intentional infliction of emotional distress when it alleges (1) the defendant's conduct was outrageous; (2) the defendant either intended to cause emotional distress or acted with reckless disregard to the probability of causing emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct actually and proximately caused that emotional distress. *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988). A defendant's conduct is sufficiently "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). "And the defendant's conduct must be 'intended to inflict injury

/////

16

or engaged in with the realization that injury will result.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1002 (1993)).

Here, as summarized above, the Tennysons allege officers pointed guns at Devon and Dominic, held them in police cars for several hours, ransacked the family home without a warrant, refused Tina's requests to use the restroom for so long that she soiled herself and screamed profanities at her. Sheriff's deputies then allegedly began a months-long campaign of stalking, harassing, detaining, mocking and jailing. It is plausible to infer that officers caused the family intense and long-lasting distress and that they knew this was likely to occur. The motion is denied.

### H. California Bane Act (Claim 17)

Finally, the Tennysons assert a claim under the Bane Act. The Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230, 1239 (2007)). When a Bane Act claim is based on an alleged federal constitutional violation, as here, plaintiffs may rely on the same allegations to prove both that the defendants deprived them of a constitutional right and threatened, intimidated or coerced them under the Bane Act. *See id.* at 1043 ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."). The claim must also rest on factual allegations that would allow an inference the defendant had a "specific intent" to violate the plaintiff's rights. *See id.* (quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017)). But an officials' subjective "intent" is a question for the factfinder. *See Cornell*, 17 Cal. App. 5th at 803 ("[T]he jury must make the second, factual, determination[:] Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" (other alterations omitted) (quoting *People v. Lashley*, 1 Cal. App. 4th 938, 949 (1991))).

Under these standards, the Tennysons' claims of excessive force, unlawful searches and unlawful detentions support their claims under the Bane Act. This court thus resolves the motion

to dismiss this claim by granting it in part with leave to amend and denying it in part to the same extent as those underlying claims.

### III. CONCLUSION

The court resolves defendants' motion by **denying it in part and granting it in part with leave to amend** as specified above. Plaintiffs must file any amended complaint **within twenty-one days**. Because the court has previously permitted amendments to the complaint, further requests for leave to amend are unlikely to be granted. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding district court's discretion not to permit amendment is broader if "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims").

This order resolves ECF No. 29.

IT IS SO ORDERED.

DATED: May 25, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE